IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA BLACKBURN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:12-CV-5030-D |
| VS. | § | |
| | § | *This memorandum opinion and order was filed under seal |
| CYPRESS EQUITIES I, LP, et al., | § | on July 31, 2014, which is the proper date to cite the opinion. |
| | § | It is being filed unsealed, with redactions requested by |
| Defendants. | § | defendants and approved by the court, on September 25, |
| | § | 2014. |

MEMORANDUM OPINION
AND ORDER

In this action alleging a violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C.

§ 206(d), retaliation, in violation of the EPA and Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, and common law fraud, defendants Cypress Equities

I, LP and Cypress Equities Operations, LP (collectively, "Cypress") move for summary

judgment. Cypress also moves for leave to file a motion to strike plaintiff's jury demand.

For the reasons explained, the court denies both motions.[1]

I

Prior to May 2008, plaintiff Lisa Blackburn ("Blackburn") was employed as a third-

year attorney at the Dallas office of a law firm, where she earned an annual base salary of

_____

[1]The court has filed this memorandum opinion and order under seal because pertinent
documents have been filed under seal. It is not apparent, however, that any part of the
memorandum opinion and order should remain sealed. Accordingly, unless within 14 days
of the date this memorandum opinion and order is filed a party moves the court to maintain
specified parts under seal, the court will order the memorandum opinion and order unsealed.
Any such motion may be filed under seal.

$170,000.[2] In 2008 Blackburn applied for and was offered an in-house counsel position with Cypress, a commercial real estate development company that builds, leases, and sells retail and mixed-use properties throughout the United States. Cypress offered Blackburn a base salary of $140,000, but it allegedly promised her that she would receive annual bonuses and raises that would significantly increase her overall compensation. In its offer letter, Cypress stated that Blackburn would be "eligible for [a] discretionary bonus," but that her employment would be "at will." D. App. 413. Blackburn accepted the offer and began working for Cypress in May 2008, reporting initially to Russell Shelton ("Shelton"), Cypress' General Counsel.

Shelton had been hired as Cypress' first in-house lawyer in January 2004, at an annual base salary of $███████ At the time he was hired, Shelton had 19 years of experience as a Texas lawyer in the relevant fields of corporate matters and real estate law. Similar to Blackburn's offer letter, Shelton's stated that, in addition to his base salary, he would be eligible for "annual discretionary bonus consideration" of up to $█████ and it stated that his employment would be "at will." *Id.* at 920. Shelton functioned as a traditional general counsel for Cypress. He focused on high-level corporate issues and transactional matters with respect to developing, buying, and selling real estate projects, and he built and

---

[2]In deciding Cypress' summary judgment motion, the court views the evidence in the light most favorable to Blackburn as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

supervised Cypress' legal department.  Prior to 2008, Shelton received periodic raises and bonuses, including a July 2007 raise that brought his annual base salary to $██████.

Blackburn began her employment at Cypress just months before the recession of 2008. Cypress contends that, for four years beginning in 2008, it was unable to obtain financing for new construction; as a result, it entered into what Cypress' owner and CEO Chris Maguire ("Maguire") referred to as "full crisis mode."  D. Br. 11.  According to Cypress, company revenues plummeted, employees were laid off, and the salaries of several members of the senior management team were reduced by up to 25%.  Cypress maintains that all employees were told that there would be no salary increases until the company received new capitalization or business dramatically improved.  In fact, between 2009 and 2012, only two of Cypress' employees received bonuses: Blackburn[3] and Senior Vice President of Marketing ██████████.

In late 2009 Cypress terminated Shelton's employment,[4] allegedly because it could no longer afford his salary.  Shortly thereafter, Cypress named Blackburn as its General Counsel, and in January 2010 she moved into the office that Shelton had vacated.  In her new position as General Counsel, Blackburn took over Shelton's pending projects list and

---

[3]Blackburn received a $25,000 bonus in December 2010.

[4]Shelton continued to work at Cypress on a part-time basis and at a greatly reduced salary until mid-August 2011, allegedly to allow him to keep his health coverage while he sought a new position.  Shelton's total income for 2010 was just under $██████ and for 2011 totaled $██████ through his departure in August.

assumed responsibility for these projects. She was also given full access to his email account, electronic files, and hard-copy files so that she could continue his work and gain historical knowledge of pending matters.

Blackburn contends that, after she became General Counsel, she continued to work on many of the same tasks and projects that Shelton had previously undertaken, and that she performed this work under similar working conditions. Nevertheless, Cypress paid her significantly less than it had paid Shelton. Blackburn maintains that she brought this salary disparity to Maguire's attention on several occasions, asking Cypress to increase her salary so that it would be comparable to Shelton's. She contends that, during the summer and fall of 2010, Maguire acknowledged that Blackburn was underpaid, and he assured her that her compensation would increase to a level commensurate with her position. In May 2011 Maguire allegedly told Blackburn that she would "get a big raise when we get some investor money in." D. Br. 17 (bold font omitted). As of July 2012, however, Blackburn still had not received a raise, and she continued to make her entry level salary of $140,000.

On July 23, 2012 Blackburn filed a formal written complaint with Cypress' Human Resources Director, Cynthia Ball ("Ball"), alleging violations of the EPA and Title VII. After receiving the complaint, Ball and Cypress' CFO, Brian Parro ("Parro"), retained outside counsel, who engaged an independent investigator, Susan Sorrells ("Sorrells"), to investigate Blackburn's allegations.

Sorrells met with Blackburn on August 1, 2012. During this meeting, Blackburn provided Sorrells with a detailed narrative of her concerns. In the following weeks,

Blackburn submitted additional written documentation to Sorrells.   Blackburn also complained to Sorrells that she felt she was being retaliated against.[5]   Blackburn alleges that, rather than respond to Blackburn's communications, Sorrells completed the investigation without interviewing Blackburn further.   On September 17, 2012 Sorrells issued a final written report in which she concluded that Cypress had not engaged in wrongdoing.

Throughout 2012 Cypress engaged in negotiations with a potential investor that it believed would inject much-needed equity into the company.  During the final stages of these negotiations, the investor submitted on September 20, 2012 a due diligence request seeking a list of all Cypress employees and a complete set of "material employment related agreement[s] and documents," including employee nondisclosure agreements ("NDAs").  D. Br. 26.  In response to this request, CFO Parro contacted HR Director Ball on September 24, 2012.  Parro told Ball that he needed copies of all employment-related signed documents, including NDAs, as soon as possible.  Ball's audit of Cypress' personnel files revealed that six employees, including Blackburn, had failed to sign several of the documents covered by the investor's due diligence request.  That same day, Ball sent all six employees an identical message stating that "[d]uring an ongoing personnel file audit, the attached information was not found in your file records.  To complete the audit on your individual file, the missing information is needed as soon as possible."  D. App. 509.  Ball attached to the memorandum

---

[5]Blackburn alleges that, from July 2012 through October 2012, she was "shunned" by Maguire and other male senior executives.  P. Br. 6.  She also maintains that her expense reports were scrutinized and that she was questioned and criticized for working remotely.

a list of missing documents, specific to each employee. Ball's request did not state the reason for the urgency in signing the documents; instead, it simply referenced an "audit."

As of the following day, September 25, 2012, Blackburn had not returned the signed documents, so Ball met with her. During this meeting, Ball informed Blackburn that Cypress had concluded from Sorrell's investigation that there had been no violations of the EPA or Title VII. Ball also discussed the missing employment documents, allegedly stressing to Blackburn that "producing the signed documents was a condition of her employment." D. Br. 28. Blackburn informed Ball that it would be necessary for Blackburn's attorney to review the documents before she signed them because she had concerns about how the documents might affect her pending discrimination claims against Cypress. Ball and Parro discussed Blackburn's request. After they spoke with outside counsel, they decided to honor the request, giving Blackburn one week (until 10:00 a.m. on October 2, 2012) to review and return the documents. Cypress prohibited Blackburn from conducting company business or accessing any material related to company business until she signed the NDA.

Blackburn reviewed the documents and responded with an email early on October 2, 2012, stating that she would sign the documents if certain specified amendments were made. Blackburn maintains that Cypress refused to consider her comments, and, in fact, Maguire did not even read them. Cypress contends that Ball, Parro, and Maguire discussed Blackburn's proposed amendments but decided not to make the requested changes because Cypress' management did not view the corporate documents as individually negotiable, it viewed their receipt as critical to the investor's due diligence process and thus potentially to

Cypress' ongoing viability, and no Cypress employee had ever refused a specific request to sign the documents.  Accordingly, Ball and Parro, allegedly with Maguire's final approval, decided to terminate Blackburn's employment, "specifically and solely because of her failure to return the signed documents" by the October 2, 2012 deadline.  D. Br. 30-31.  In an October 2, 2012 email, Ball informed Blackburn that

> [y]our refusal to sign the documents, as drafted, leaves us with no option other than to terminate your employment, effective immediately, due to your failure to return the documents in the time prescribed.  We cannot make an exception for you or otherwise agree to exempt you from being bound by the terms of these policies and agreements.

D. App. 764.  Cypress did not afford Blackburn the opportunity to withdraw her comments and sign the documents "as is."  P. Br. 7.

In December 2012 Blackburn filed the instant lawsuit against Cypress and Maguire,[6] alleging a violation of the EPA, retaliation, in violation of the EPA, and common law fraud. In her second amended complaint, Blackburn added a claim for retaliation, in violation of Title VII.  Defendants move for summary judgment dismissing all of Blackburn's claims. They also move for leave to file a motion to strike Blackburn's jury demand.  Blackburn opposes both motions.

## II

The court turns first to Cypress' motion for summary judgment.  When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof

_____

[6]In May 2014 Blackburn voluntarily dismissed her claims against Maguire.

at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond the opposing party's pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986 ). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

When a party moves for summary judgment on a claim on which it will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) ( quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23,

2007) (Fitzwater, J.)).

III

Cypress moves for summary judgment dismissing Blackburn's EPA claim.

A

The EPA prohibits employers from discriminating on the basis of sex by paying wages to employees of one sex that are less than the rate paid employees of the opposite sex for equal work on jobs that require equal skill, effort, and responsibility and are performed under similar working conditions. *See* 29 U.S.C. § 206(d)(1). To establish a prima facie case under the EPA, Blackburn must show: "1. [that Cypress] is subject to the Act; 2. [Blackburn] performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. [Blackburn] was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ*., 984 F.2d 151, 153 (5th Cir. 1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986) (footnote omitted)). Blackburn must show that any pay disparity is a result of sex and cannot be attributed to any other factor, and she must also show that her male comparator held a position that required virtually identical skills, effort, and responsibilities. *See* 29 U.S.C. § 206(d)(1); *Brennan v. City Stores, Inc*., 479 F.2d 235, 238 (5th Cir. 1973). "If the plaintiff meets this burden, the burden of proof 'shifts to the employer to show that the differential is justified under one of the Act's four exceptions.'" *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)) (unequal pay under EPA and Title VII). These exceptions are: the pay differential is based on (1) a

-9-

seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex.  29 U.S.C. § 206(d)(1); *Schulte v. Wilson Indus., Inc.*, 547 F. Supp. 324, 338-39 (S.D. Tex. 1982).  "The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion."  *Plemer*, 713 F.2d at 1136 (quoting *Corning Glass Works*, 417 U.S. at 197).  Although EPA claims are subject to a burden-shifting framework that is similar to the one used in Title VII claims, there is one critical difference.  "In a Title VII case, the burden of persuasion always remains with the plaintiff."  *Plemer*, 713 F.2d at 1136.  In an EPA case, however, the defendant has the burden of persuasion if the plaintiff establishes a prima facie case.  *Id*.

B

To satisfy the second and third elements of her prima facie case,[7] Blackburn compares her salary and benefits to Shelton's, arguing that she and Shelton performed "substantially equal work" during their respective tenures as General Counsel of Cypress, yet Shelton earned significantly more than she.  P. Br. 13.

1

Cypress contends that Blackburn cannot establish the second element of a prima facie case because she and Shelton did not perform work in a position requiring equal skill, effort,

---

[7]Cypress does not dispute that it is subject to the EPA, but it contends that it is entitled to summary judgment because Blackburn cannot establish the second or third element of her prima facie case under the EPA.

and responsibility under similar working conditions. It maintains that, not only did Blackburn and Shelton have vastly different levels of legal experience when they began their employment at Cypress, they also had different responsibilities in their roles as General Counsel: Shelton assisted with major corporate transactions and oversaw and supervised the growth of the legal department, and Blackburn focused mainly on litigation.[8] Cypress also maintains that Blackburn's working conditions were dramatically different from Shelton's: expenses were being slashed, employees were being laid off, members of senior management took large pay cuts, and the CEO received no compensation at all.

Blackburn responds that, although neither she nor Shelton had written job descriptions, they both held the position of General Counsel, reported to Maguire, worked similar hours, and served as Cypress' top internal legal advisor. Blackburn also cites Maguire's testimony that, when he promoted Blackburn to the position of General Counsel, he did not refuse to give her a raise based on lack of credentials or experience, lack of training, or lack of ability. Blackburn contends that, after she became General Counsel, "she continued to work on many of the same tasks and projects Shelton had previously undertaken," and she lists 31 examples of "such tasks and projects, taken directly from [her] activity logs." *Id.*

---

[8]Cypress contends that, when Blackburn did work on corporate matters as General Counsel, "her inexperience showed," and her irregular work habits and frequent non-responsiveness to legal questions posed by senior management caused managers to stop calling on her for help and to determine that Blackburn lacked practical business sense. *See* D. Br. 38.

"Skill includes consideration of such factors as experience, training, education, and ability." *Pearce v. Wichita Cnty., City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979) (quoting 29 C.F.R. § 800.125 (1977)) (internal quotation marks omitted). "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." *Id.* (quoting 29 C.F.R. § 800.127 (1977)) (internal quotation marks omitted). "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Id.* (quoting 29 C.F.R. § 800.130 (1977)) (internal quotation marks omitted). "[T]he element of working conditions encompasses two subfactors: 'surroundings' and 'hazards.'" *Id.* at 133 n.6 (quoting *Corning Glass Works*, 417 U.S. at 202) (alteration in original; some internal quotation marks omitted). "The employees whose pay is the subject of comparison may hold jobs in succession as well as simultaneously." *Id.* at 133. "To establish 'equal work,' the employee need not prove that the duties performed are identical, but merely that the 'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.'" *Id.* (quoting *Brennan*, 479 F.2d at 238-39).

The court concludes that a reasonable trier of fact could find that the skill, effort, and responsibility required of Blackburn was substantially equal to that required of Shelton, and that she and Shelton performed the job of General Counsel under similar working conditions. Blackburn has adduced evidence that she and Shelton held the same job title, reported to the same superior, worked similar hours, and served as Cypress' top internal legal advisor.

-12-

2

Cypress next contends that Blackburn cannot establish that she was paid less than Shelton because Shelton was hired as General Counsel in 2004 with an annual base salary of $ ███, and Blackburn's annual base salary at the time she was hired was $140,000; when Blackburn was General Counsel and Shelton worked under her, Blackburn earned significantly more than Shelton; and because Blackburn and Shelton never simultaneously occupied the same position or the same level position, Blackburn cannot show that she was paid less than Shelton for the same position at the same time.

Blackburn responds that the relevant inquiry for the third element of her prima facie case is the salary earned by Shelton as General Counsel compared to the salary she earned as General Counsel. She contends that she can establish the third element of her prima facie case because, in his position as General Counsel, Shelton's compensation increased annually, rising from an entry salary of $ ███ to $ ███ at the time of his demotion, and he was permitted to participate in Cypress' 401(k) plan. In contrast, Blackburn's base salary of $140,000 never increased, and she was not offered the opportunity to participate in Cypress' 401(k) plan.[9]

To satisfy the third element of her prima facie case, it is not necessary for Blackburn

---

[9]Cypress moves for leave to file a supplemental appendix of evidence to prove, *inter alia*, that Blackburn was offered the opportunity to participate in Cypress' 401(k) plan but declined to do so. Because the court does not rely on Blackburn's allegedly not being offered the opportunity to participate in Cypress' 401(k) plan in deciding Cypress' motion, the court denies Cypress' motion as moot in this respect.

to prove that she was paid less than Shelton at the same time.  *See, e.g., Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir. 1973) ("[T]he Equal Pay Act applies to jobs held in immediate succession, as well as simultaneously."); *see also, e.g., Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984) ("The analysis [under a Title VII wage discrimination case] is the same even where the two employees whose salaries are being compared are employed at different times in the same position." (citing *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A May 1981); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 64 (5th Cir. 1980))).

Nor is it fatal to Blackburn's prima facie case that Shelton was paid less than Blackburn after he was demoted.  The relevant comparison is between the amount Blackburn was paid in the position of General Counsel and the amount Shelton was paid when he held the position of General Counsel.  A reasonable trier of fact could find that Shelton was paid more.  Although Blackburn's initial starting salary was $███ per year more than Shelton's, Shelton was given periodic pay raises that increased his salary to $█████ while Blackburn's annual salary remained at $140,000.  Even taking into account the $25,000 bonus that Blackburn was paid in 2010, it is undisputed that Blackburn was paid less than Shelton while performing the position of General Counsel.

## C

Because a reasonable trier of fact could find that Blackburn has satisfied her obligation to establish a prima facie case, the burden of proof has shifted to Cypress to demonstrate that the pay differential is justified under one of the EPA's four exceptions.  *See,*

*e.g., Plemer*, 713 F.2d at 1136.  These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion." *Id*.  Accordingly, to prevail on its motion for summary judgment, Cypress must establish beyond peradventure that Blackburn's lower salary is justified under one of the four exceptions.

1

Cypress contends that Blackburn and Shelton were paid different salaries based on a "factor other than sex," as permitted by 29 U.S.C. § 206(d)(1)(iv).  It posits that, during the period when Blackburn served as General Counsel, Cypress was simply not in a position to pay any corporate counsel, male or female, the sum of $███████ per year.[10]  Cypress maintains that, in contrast to the "highly prosperous period for the company" during which Shelton was General Counsel, from 2010 to 2012 "Cypress was literally fighting for its life" as revenues declined, cash reserves dwindled, debts mounted, and lawsuits accumulated; during this period, employee raises and bonuses were "few and far between." D. Br. 38-39.[11]

---

[10]Cypress contends that it in fact terminated Shelton's employment for this very reason.

[11]In the context of its argument that Blackburn cannot establish a prima facie case, Cypress argues several other factors that allegedly justified the difference in Blackburn's and Shelton's salaries, including the "vastly different levels of legal experience," D. Br. 37, between Shelton and Blackburn and the perception among senior management that Blackburn "lacked practical business sense," *id.* at 38.  In her response, Blackburn cites Maguire's testimony that he did not base compensation decisions for Blackburn on any factor related to her qualifications.  *See* P. App. 41 (Maguire's testimony that he did not decide or refuse to increase Blackburn's base salary after she became General Counsel in 2010 "based upon her lack of credentials, lack of training, or lack of ability.").  The court holds that, to the extent Cypress intends to argue that any of these "other factors" constituted a "factor other than sex" that justified the pay differential between Shelton and Blackburn, a genuine

Blackburn responds that Cypress' financial condition during 2010 to 2012 is not a "factor other than sex" because it is not a "bona fide" factor such as a gender-neutral ranking or job evaluation system and is not a factor that was adopted for a legitimate business reason. Blackburn next argues that, even if Cypress' financial condition could objectively constitute a "factor other than sex," Cypress is not entitled to summary judgment because Blackburn's evidence shows that Cypress' proffered reasons for the pay disparity are a pretext for sex discrimination: although Maguire told Blackburn that Cypress did not increase anyone's salary from 2008 through 2012, Cypress' payroll records indicate that 22 of Cypress' employees received pay raises between 2008 and 2012; Cypress' own documents describe its financial condition as "promising and poised for growth," P. Br. 20, with reported actual revenues of $██████ for 2011 and projected revenues of $██████ for 2012; Cypress Equities Operations, LP, the entity Blackburn maintains was her employer, hired 30 new employees between 2009 and 2012, with aggregate salaries totaling $██████ and in 2011 and 2012, Cypress was breaking ground on new, active projects and was not, as Cypress argues, "languishing." *Id.* at 23.

2

"Any factor other than sex" is a general, catch-all exception to the application of the EPA. *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F.Supp.2d 832, 852 (S.D. Tex. 2011) (citing *Perales v. Am. Ret. Corp.*, 2005 WL 2367772, at *6 (W.D. Tex. Sept. 26, 2005)).

---

issue of material fact precludes summary judgment on this basis.

"The exception has been found to apply 'when the disparity results from unique characteristics of the same job; from an individual's experience, training or ability; or from special exigent circumstances connected with the business." *Id.* (quoting *Perales*, 2005 WL 2367772, at *6). A pay differential based on an employer's changed financial condition can qualify as a factor other than sex. *See, e.g., Covington v. S. Ill. Univ.*, 816 F.2d 317, 324-25 (7th Cir. 1987) (noting that district court concluded, *inter alia*, that plaintiff's low starting salary was result of financial emergency that employer was experiencing at time she was hired, and stating in *dicta* employer's financial condition could qualify as a factor other than sex); *Joyner v. Town of Elberta*, ___ F.Supp.2d. ___, 2004 WL 2006780, at *7 (S.D. Ala. May 16, 2014) (holding that town established that decision to pay male permanent police chief more than it paid female interim police chief was based on factor other than sex where, *inter alia*, difference resulted from decline in revenue during female interim police chief's tenure); *Brokaw v. Weiser Sec.*, 780 F.Supp.2d 1233, 1251 n.29 (S.D. Ala. 2011) (rejecting plaintiff's contention that affirmative defense of "any other factor other than sex" is confined to "unique characteristics of the same job; . . . an individual's experience, training, or ability; or . . . special exigent circumstances connected with the business," and holding that business reasons are legitimate factors other than sex so long as they can be rebutted (quoting *Irby v. Bittick*, 44 F.3d 949, 956 (11th Cir. 1995))); *Shannon v. Hotel Emps. & Restaurant Emps. Int'l Union*, 2005 WL 2387689, at *10 (N.D. Ill. Sept. 22, 2005) (noting that Seventh Circuit had suggested in *dicta* in *Covington* that employer could rely on its financial difficulties as a factor other than sex to justify disparity in pay between male and female employees and

stating that, "at least absent a policy such as that at issue in *Covington*, the Seventh Circuit would find that an employer's financial difficulties excuse a pay disparity between female and male employees performing equal work.").

Because a pay differential based on any other factor other than sex is an affirmative defense, Cypress must meet the beyond peradventure standard to obtain summary judgment. *See supra* § II; *see also Brokaw*, 780 F.Supp.2d at 1251 (holding concerning this affirmative defense that defendant's "burden of proof is 'heavy,' in the sense that the employer 'must demonstrate that the factor of sex provided *no basis* for the wage differential.'" (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003)). Cypress has failed, however, to establish under this heavy standard that it was unable to compensate Blackburn at the same level that it had previously compensated Shelton.

Although Cypress has offered evidence of the financial hardship that it experienced from 2008 through 2012, Blackburn has introduced contradictory evidence. For example, Blackburn has submitted proof that several Cypress employees received raises between 2008 and 2012,[12] that Cypress had annual revenues of $███████ in 2010 and $███████ in

---

[12]Although Cypress objects to the specific data on which Blackburn relies to argue that the company gave numerous pay increases during the relevant period, it admits that, in December 2010, twelve Cypress corporate employees received raises; in 2011, two Cypress employees received raises; and in 2012 six women and five men received raises, and, for the first time, two men on the list made slightly more after their raises than Blackburn had been making since 2008.

2011,[13] and that, between 2009 and 2012, Cypress hired 30 new employees with aggregate salaries totaling $███████[14] Although Cypress disputes the data on which Blackburn relies and argues that "[t]he proof in the record is simply overwhelming . . . [that t]he company was in dire financial straits during Blackburn's entire tenure as General Counsel," D. Reply 8, Cypress is not entitled to summary judgment unless it can establish beyond peradventure that it paid Blackburn less in her position as General Counsel than it had previously paid Shelton because it could not afford to pay Blackburn at Shelton's rate. Because Cypress has not met this heavy burden, it is not entitled to summary judgment on Blackburn's EPA claim.

## IV

The court now considers Blackburn's claims for retaliation under the EPA and Title VII.

## A

"Both Title VII and the EPA—through the Fair Labor Standards Act ('FLSA')—

---

[13]Cypress criticizes Blackburn's reliance on "revenue" figures, arguing that revenues are not profits and citing Cypress' personnel budget of $███████ from 2008 as a point of reference. Yet Cypress itself maintains that it experienced massive layoffs in the period following 2008, so that a pre-recession personnel budget of $███████ does not shed any light on the cash flow situation at Cypress in 2010 and 2011.

[14]Cypress argues that, as of September 21, 2012, Cypress' corporate entity had only 44 employees remaining, and, although Blackburn lists persons who were hired "by someone," most were not employed or paid by Cypress, and, in any event, Blackburn does not challenge the net loss figures that Cypress has presented. It also contends that, in all of 2010, Cypress hired only one person (a receptionist), at a salary of $████. Whether Cypress did, or did not, hire the employees on Blackburn's list for the years 2009, 2011, and 2012 appears to present a fact issue.

prohibit employers from retaliating against employees who engage in activity protected under the respective acts." *Browning v. Sw. Research Inst.*, 288 Fed. Appx. 170, 178 (5th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 215(a)(3)).[15]  Because Blackburn relies on circumstantial evidence to support her retaliation claims, she must proceed under the familiar *McDonnell Douglas* burden shifting framework.  *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework."); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) ("Although *McDonnell Douglas* was a Title VII case, the burden-shifting framework established therein has been adapted and applied to cases under the . . . FLSA.").

Blackburn must first demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *See,*

---

[15]42 U.S.C. § 2000e-3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  29 U.S.C. § 215(a)(3) similarly prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]"

*e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but-for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Blackburn establishes a prima facie case, the burden shifts to Cypress to articulate a legitimate, non-retaliatory reason for the alleged retaliatory action taken. *Hagan*, 529 F.3d at 624; *Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Cypress meets its production burden, the burden shifts back to Blackburn to produce evidence that retaliation for Blackburn's protected conduct, rather than Cypress' proffered legitimate, non-retaliatory reason, was the "but-for cause" of her termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g. Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the

action." (citing *Nassar*, 133 S.Ct. at 2533-34)).  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."  *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

Cypress disputes only the third element of the prima facie case, contending that Blackburn cannot meet her burden of establishing a causal link between her EPA complaint in July 2012 and her termination in October 2012.  Blackburn responds that the temporal proximity between her July 2012 complaint and her September 2012 suspension/October 2012 termination satisfies the third prong.

The standard for satisfying the causation element at the prima facie stage is "much less stringent" than the "but-for" causation that a jury must find.  *Montemayor*, 276 F.3d at 692.  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."  *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993)).  The temporal proximity, however, must be very close.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (stating that one and a half month period between protected activity and adverse action could, by itself, establish causation)).

It is undisputed that Blackburn filed her EPA complaint on July 23, 2012 and that she

-22-

was terminated on October 2, 2012.  The close timing between the two events is sufficient to establish the requisite causal connection under the third prong of the prima facie case.  *See, e.g., O'Neal*, 237 F.3d at 1253.

C

Cypress' stated reason for terminating Blackburn's employment is that she failed to sign the required NDA and other employment documents by the October 2, 2012 deadline set by Maguire, Ball, and Parro.  Cypress has carried its burden of production, producing considerable evidence in support of this legitimate, non-retaliatory reason.

D

Under the *McDonnell Douglas* burden-shifting framework, because Cypress has produced evidence of a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to Blackburn to show "by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted).  A plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation and internal quotation marks omitted).  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Blackburn contends that a reasonable trier of fact could find that Cypress terminated

her employment, not on the basis of her failure to sign the NDA and other documents within a week, but because she filed a complaint of discrimination.  In addition to the temporal proximity between the complaint and her termination, Blackburn relies on Cypress' "shifting justifications" for her termination[16] and evidence that Cypress has mischaracterized the facts and time line surrounding the investor's due diligence request.  She contends that Maguire, Cypress' CEO, never signed the NDA or any of the other employment documents that Blackburn was asked to sign; Cypress refused to give Blackburn more than one week to review and sign the documents even though the due diligence process with the investor did not even begin until the day Cypress gave Blackburn the ultimatum and continued through mid to late December 2012; and, contrary to Cypress' assertion, Blackburn never refused to sign the documents—she merely requested revisions, and in fact offered to come to the office to finalize the documents, but Cypress terminated her employment without offering her a final chance to sign the documents after it rejected her request for revisions.

---

[16]Blackburn points to the "pages [of] criticisms of Blackburn's performance" in Cypress' summary judgment brief and argues that, to the extent Cypress relies on performance issues to support its termination decision, these "shifting justifications" over time create a genuine issue of material fact regarding pretext.  The evidence Blackburn relies on would not enable a reasonable trier of fact to find, however, that there were any "shifting justifications" in connection with Blackburn's termination.  In fact, the pages Blackburn cites are from a subsection entitled, "Management Encounters Problems with Blackburn's Job Performance *But Takes No Action Against Her*." D. Br. 19 (emphasis added).  And although Cypress points in its summary judgment brief to various perceived performance problems, it never argues that these problems supported its decision to terminate Blackburn's employment.  Rather, Cypress clearly contends that Blackburn was terminated "specifically and solely because of her failure to return the signed documents" by the October 2, 2012 deadline.  *Id.* at 30-31.

Although this is a close case, the court holds that a reasonable trier of fact could find that Cypress' proffered reason for terminating Blackburn—her refusal to sign the NDA and other documents within one week—is pretextual. As evidence of pretext, Blackburn relies on the close timing between the filing of her EPA complaint and her termination. "[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate[.]" *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417 n.9 (5th Cir. 2003) (alteration in original), *overruled on other grounds as recognized by Smith v. Xerox Corp.*, 602 F.3d 320, 327-28 (5th Cir. 2010). Such temporal proximity must generally be "very close." *Breeden*, 532 U.S. at 273-74. Here, Blackburn filed her formal complaint alleging violations of the EPA and Title VII on July 23, 2012. Ball received Sorrells' report from the internal investigation of Blackburn's complaint on September 18, 2012. Approximately one week later, on September 25, 2012, Ball gave Blackburn an ultimatum: sign the NDA and the other missing documents within one week or be terminated. Blackburn was terminated on October 2, 2012. A reasonable trier of fact could find that Blackburn's termination less than one month after Cypress concluded its internal investigation of her complaint is "suspiciously proximate." *Fabela*, 329 F.3d at 417 n.9 (alteration and internal quotation marks omitted).

Temporal proximity alone is insufficient, however, to establish "but-for" causation.

*See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).[17]

Nonetheless, "the combination of suspicious timing with other significant evidence of

pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche,

LLP*, 190 F.3d 398, 409 (5th Cir. 1999); *see also Evans v. City of Houston*, 246 F.3d 344, 356

(5th Cir. 2001) (holding that close temporal proximity between plaintiff's appearance at

coworker's grievance hearing and her demotion, coupled with other evidence, gave rise to

a conflict of substantial evidence on ultimate issue whether employer had demoted plaintiff

in retaliation for her appearance at coworker's grievance hearing).

Cypress gave Blackburn one week to sign the NDA and other employment documents

missing from her file, explaining in an email that "this is a critical part of the due diligence

process." D. App. 539.  When Blackburn failed to return signed copies of the documents by

---

[17]In *Strong* the Fifth Circuit explained:

> To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue.  In *Clark County School District v. Breeden*, the Supreme Court noted that cases that accept mere temporal proximity as sufficient evidence of causality *to establish a prima facie case* uniformly hold that the temporal proximity must be very close.  *Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation.  But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.

*Strong*, 482 F.3d at 808 (addressing Title VII) (emphasis in original; ellipsis, citations, and internal quotation marks omitted).

10:00 a.m. on October 2, 2012, Cypress terminated her employment that very afternoon,

stating:

> Your refusal to sign the documents, as drafted, leaves us with no
> option other than to terminate your employment, effective
> immediately, due to your failure to return the documents in the
> time prescribed.  We cannot make an exception for you or
> otherwise agree to exempt you from being bound by the terms
> of these policies and agreements.

*Id.* at 764.  Blackburn has produced evidence, however, from which a reasonable trier of fact

could find that the one-week deadline from which Cypress allegedly "c[ould not] make an

exception" was artificially imposed.  *Id.*  For example, Blackburn has adduced evidence that

the investor did not sign its Confidentiality Agreement—which she alleges was a precursor

to the due diligence process—until September 24, 2012.  Maguire testified during his

deposition that the "normal range of time" it takes a company to perform its due diligence

is four to six months, P. App. 33, and he could not recall whether there was a "hard date" by

which all NDAs had to be completed, *id.* at 37.  A reasonable trier of fact could therefore find

that, although Cypress told Blackburn that having the NDA and other documents returned

immediately was "a critical part of the due diligence process," *id.* at 539, and that it could not

"make an exception for [Blackburn,]" *id.* at 764, this was not in fact true.  Moreover,

Cypress' immediate termination of Blackburn's employment, within hours of Blackburn's

email requesting amendments to the documents and without any further warning or

discussion with Blackburn, would enable a reasonable trier of fact to find that Blackburn's

failure to return the signed documents at 10:00 a.m. on October 2, 2012 was not the real

-27-

reason Cypress terminated Blackburn's employment.[18]

Because a reasonable trier of fact could find that Cypress' proffered reason for Blackburn's termination is pretextual and that "the desire to retaliate was the but-for cause of the challenged employment action," *Nassar*, 133 S.Ct. at 2528, the court denies Cypress' motion for summary judgment on Blackburn's retaliation claims.

V

The court now considers Cypress' motion for summary judgment dismissing Blackburn's fraud claim.

A

 Blackburn alleges that Cypress committed fraud because Maguire promised her when he hired her, and again when he promoted her to the position of General Counsel, that she would receive regular salary increases when he had no intention of fulfilling such promises. Cypress moves for summary judgment, arguing that oral promises of future wage increases

---

[18]Cypress seeks leave to file a supplemental appendix containing evidence that it had received complaints about Blackburn's performance before she filed her discrimination complaint. Evidence that Cypress had received complaints about Blackburn's performance does not change the court's pretext analysis, however, because Cypress contends that it terminated Blackburn's employment because she failed to sign the required NDA and other employment documents by the October 2, 2012 deadline. Cypress does not maintain that any perceived performance problems caused or contributed to the decision to terminate Blackburn. Nor would the existence of documented complaints about Blackburn's performance before she filed her discrimination complaint preclude a reasonable trier of fact from finding, based on the temporal proximity between Blackburn's complaint and her termination and other evidence of pretext, that her engaging in protected activity was the but-for cause of her termination. Accordingly, the court denies Cypress' motion for leave to file a supplemental appendix.

are not the proper basis of a fraud claim, and, in this case, the undisputed facts preclude the

claim because Blackburn signed an acknowledgment that stated what her compensation

would be and declared that any increases were within the discretion of management.

Blackburn responds that she reasonably relied on Cypress' HR representative's

statement that the company was doing fine, that Maguire repeatedly told her he knew she was

underpaid and would remedy the situation, and that Maguire testified that he did not consider

giving Blackburn a pay increase in 2009, 2010, 2011, or 2012.

B

In Texas, the elements of common law fraud are:

> (1) a material representation was made; (2) it was false when
> made; (3) the speaker either knew it was false, or made it
> without knowledge of its truth; (4) the speaker made it with the
> intent that it should be acted upon; (5) the party acted in
> reliance; and (6) the party was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (citations

omitted) (Texas law).  To prove fraud based on a promise of future performance, a plaintiff

must show that the person making the promise had no intention of performing at the time he

made the promise.  *Id*.; *see also Formosa Plastics Corp. USA v. Presidio Eng'rs &*

*Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (stating that a "promise to do an act in the

future is actionable fraud when made with the intention, design and purpose of deceiving,

and with no intention of performing the act." (citation and internal quotation marks omitted)).

"Though a party's intent is determined at the time of the representation, this intent may be

inferred from the party's acts after the representation is made."  *W & F Transp., Inc. v.*

*Wilhelm*, 208 S.W.3d 32, 48 (Tex. App. 2006, no pet.).  But "the mere failure to perform a contract is not evidence of fraud."  *Formosa Plastics*, 960 S.W.2d at 48.

Blackburn testified that, in September 2009, Maguire told her that, starting in January 2010, she would be paid "consistent with the general counsel function," D. App. 83; that, in the summer of 2010, Maguire "said that he would increase [her] salary consistent with the general counsel position" and "assured [her] that [her] compensation would increase in a manner consistent with [her] position in the next few months," *id.* at 123; that, in April 2011, Maguire indicated to Blackburn that she would be getting a raise if her compensation was covered by partnership funds; and that, in May 2011, Maguire told Blackburn that "you'll get a big raise when we get some investor money in," *id.* at 142.  It is undisputed that Blackburn never received a raise.  And the summary judgment record contains evidence from which a reasonable trier of fact could find that, at the times Maguire allegedly promised to give Blackburn a raise, he had no intention to do so.  For example, Maguire testified during his deposition that, after Blackburn became General Counsel of Cypress, he "did not intend to increase her pay." D. Br. 199.  He further testified that, as CEO of Cypress, he did not consider giving Blackburn a pay increase in 2009, 2010, 2011, or 2012.  Based on evidence such as this, a reasonable jury could find that Maguire at least twice represented to Blackburn that she would receive a pay increase by a specified future date, but that, at the time he made these promises, he did not intend to give Blackburn a raise within the promised period.

Because Cypress does not challenge the other elements of Blackburn's fraud claim and has failed to establish that, as a matter of law, Blackburn cannot prevail on her common

law fraud claim based on Cypress' promise of a future wage increase, the court denies Cypress' motion for summary judgment on this claim.[19]

## VI

The court now turns to Cypress' motion for leave to file a motion to strike Blackburn's jury demand.

## A

Blackburn filed her "Original Complaint and Jury Demand" on December 7, 2012, in which she specifically requested a jury trial on all contested issues of fact. On March 27, 2013 the court entered a scheduling order ("Scheduling Order") that set January 17, 2014 as the deadline for filing motions for summary judgment and other motions not otherwise covered by another deadline in the Scheduling Order.[20] On August 5, 2013 Blackburn filed her "Second Amended Complaint and Jury Demand," again requesting a jury trial on all contested issues of fact. On August 16, 2013, in its answer to Blackburn's second amended complaint, Cypress asserted for the first time that Blackburn "has demanded a trial by jury in Paragraph 38, but den[ied] that Plaintiff's claims should be so tried." Ans. to 2d. Am. Compl. ¶ 38. Cypress did not, however, move to strike Blackburn's jury demand.

_____

[19]Blackburn objects on various grounds to the evidence submitted in support of Cypress' motion for summary judgment. Because the court is denying Cypress' motion for summary judgment and has not relied on the evidence to which Blackburn objects, the court overrules the objections as moot.

[20]On November 20, 2013 the court extended the deadline to file motions for summary judgment to March 28, 2014, but it did not similarly extend the deadline for filing other motions not otherwise covered.

On March 29, 2014 Cypress filed the instant motion for leave to file a motion to strike Blackburn's jury demand, arguing that there is no deadline to file a motion to strike jury demand. Cypress also maintains that the court can in its discretion grant a motion to strike a jury demand at any time, even on the eve of trial, and that Blackburn is not entitled to a jury trial because she waived this right by signing an "Assigned Employee Acknowledgments" document on June 12, 2009.[21]

Blackburn responds that Cypress' motion, filed 15 months after Blackburn filed her complaint and jury demand and more than 60 days after the January 17, 2014 deadline for motions not otherwise covered in the Scheduling Order, is untimely, and that Cypress has failed to show good cause for modifying the pleading deadline.

B

Cypress was required to file its motion to strike plaintiff's jury demand by the Scheduling Order's January 17, 2014 deadline for "a motion not otherwise covered by this order." The Scheduling Order states that "[a] party must file a motion not otherwise covered by this order no later than January 17, 2014." Scheduling Order at 3 (bold font omitted). It also provides that this "deadline does not apply to motions in limine or to objections filed pursuant to Rule 26(a)(3), which must be filed no later than the deadlines that will be established by the trial setting order that the court will issue later." *Id*. Because a motion to

---

[21]On September 5, 2013 Cypress produced a copy of the "Assigned Employee Acknowledgments" document to Blackburn, and during Blackburn's January 13, 2014 deposition, it questioned her about this document.

strike a jury demand is neither "otherwise covered by this order" nor within the exceptions to the deadline, the Scheduling Order requires this type of motion to be filed by January 17, 2014. "The purpose of this catchall deadline is to regulate the filing of pretrial motions so that the court can engage in an orderly process of bringing a case to trial." *Connect Insured Tel., Inc. v. Qwest Long Distance, Inc.*, 2012 WL 3150957, at *3 (N.D. Tex. Aug. 3, 2012) (Fitzwater, C.J.) (citing *Wright v. Blythe-Nelson*, 2001 WL 804529, at *3 (N.D. Tex. July 10, 2001) (Fitzwater, J.)). It is the court's intent to regulate the filing of all pretrial motions except those that reasonably should be allowed close to commencement of trial, such as motions in limine. Accordingly, Cypress was required to file its motion to strike jury demand by January 17, 2014 at the very latest.

## C

Because Cypress seeks leave to file a motion after the deadline prescribed in the Scheduling Order, the court must determine whether to modify the Scheduling Order to permit Cypress to file the motion.

## 1

Fed. R. Civ. P. 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The "good cause" standard focuses on the diligence of the party seeking to modify the scheduling order. *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good

cause." *Id.*; *Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).  Instead, the movant must show that, despite its diligence, it could not reasonably have met the scheduling deadline.  *Am. Tourmaline Fields*, 1998 WL 874825, at *1 (citing 6A Wright, et al., *Federal Practice & Procedure*, § 1522.1 at 231 (2d ed. 1990)); *see also Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

"In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *3 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) (citing *S & W Enters.*, 315 F.3d at 536).

2

The "Assigned Employee Acknowledgments" document, on which Cypress relies as a basis to strike Blackburn's jury demand, was executed on June 12, 2009, and has presumably been in Cypress' possession since that date.  And Cypress has known since at least August 16, 2013, when it filed its answer to Blackburn's second amended complaint and denied that Blackburn was entitled to a jury trial, that it intended to oppose Blackburn's jury demand.  Yet Cypress waited until March 29, 2014 to move for leave to strike the jury demand.  Cypress justifies the delay in filing the motion to strike on the basis that the right to strike a jury demand arises under Rule 39, which contains no deadline for filing such a

-34-

motion, and citing Moore's Federal Practice § 39.13, which states that "a court has discretion to permit a motion to strike a jury demand to be filed at any time[.]"  D. Reply 3 (internal quotation marks omitted).[22]  Although there is nothing in Rule 39 that *prevents* this court, in its discretion, from striking a jury demand at any point before trial, the court also has the discretion to enforce a scheduling order deadline for filing a motion to strike a jury demand so that the parties can know reasonably in advance of trial whether the case will be tried to the court or to a jury.   Cypress was clearly aware of the basis for moving to strike Blackburn's jury demand well before the Scheduling Order's deadline expired on January 17, 2014.   In fact, Cypress' knowledge of these facts perhaps as early as 2009, and, at the very latest, as of August 16, 2013, demonstrates that it could have complied with the Scheduling Order deadline for filing motions not otherwise covered.  *See Am. Tourmaline Fields*, 1998 WL 874825, at *2.  Cypress has not demonstrated that, "despite [its] diligence, [it] could not have reasonably met the scheduling deadline."  *Id*. at *1.  Therefore, the first factor of the court's Rule 16(b)(4) analysis weighs strongly against granting Cypress leave to file its motion to strike jury demand.

3

The second factor addresses the importance of the motion to the case.  A motion to strike a jury demand is somewhat important in that, if allowed and granted, it changes the

---

[22]Cypress also relies on *JPA, Inc. v. USA Processors Trading Corp.*, 2006 WL 740401, at *12 (N.D. Tex. Mar. 15, 2006) (Solis, J.), which states that "[a] court has the discretion to grant a motion to strike a jury demand at any time, even on the eve of trial."

trier of fact from a jury to the court and alters many aspects of the trial itself.  But such a motion is not important in the sense that, if Cypress is unable to strike the jury demand and try the case to the court, it will be precluded from fully defending itself against Blackburn's lawsuit.

4

The remaining two factors concern prejudice, and the court will consider them together.  *See, e.g., Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.).  Blackburn argues that she has already incurred expenses in connection with preparing her case specifically for trial by jury—including attorney time and costs to retain a jury consultant.  Cypress' assertion that it "seems unlikely" that Blackburn has already incurred significant expenses in preparations having to do with the jury is insufficient to demonstrate good cause for permitting Cypress' motion.  D. Reply 4.  "The absence of prejudice to the nonmovant is relevant to Rule 15(a), but it does not fulfill the 'good cause' requirement of Rule 16(b)."  *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

5

Assessing the four factors holistically, the court concludes that Cypress has not established good cause to modify the Scheduling Order.  The court "does not mechanically count the number of factors that favor each side[,][a]nd it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order."  *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009)

(Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).  Because Cypress has failed to provide a sufficient explanation for the untimely filing of its motion and has demonstrated a lack of diligence in filing the motion, Cypress has not established good cause to amend the Scheduling Order.  Accordingly, its motion for leave to file a motion to strike jury demand is denied.

*     *     *

For the foregoing reasons, Cypress' motion for summary judgment is denied, its motion for leave to file a supplemental appendix is denied as moot, and its motion for leave to file a motion to strike Blackburn's jury demand is denied.  Blackburn's objections to Cypress' summary judgment evidence are overruled as moot.

**SO ORDERED**.

July 31, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE